# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AMY BROWN**<br>     **Plaintiff,**<br>v.<br>**AMETEK, INC.**<br>     **Defendant.** | **CIVIL ACTION NO. 20-1475** |

## MEMORANDUM OPINION

**Rufe, J.**                                           **March 10, 2022**

Plaintiff Amy Brown has sued her former employer, bringing claims of discrimination on the basis of sex, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA").[1] Defendant AMETEK, Inc. has moved for summary judgment on all claims. For the reasons set forth below, the motion will be granted.

### I.  LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[2] A court will award summary judgment on a claim or part of a claim where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A fact is "material" if it could affect

---

[1] As the liability standards for PHRA track those of Title VII claims, the Court will not discuss the PHRA separately. *See, e.g., Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.8 (3d Cir. 2016) (explaining that Title VII and the PHRA are assessed under the same standards); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006) (construing Title VII and the PHRA "consistently").

[2] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[3] Fed. R. Civ. P. 56(a).

the outcome of the suit, given the applicable substantive law.[4] A dispute is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, "a court may not weigh the evidence or make credibility determinations."[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[8] "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted."[9] If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[10]

## II. BACKGROUND

The parties have stipulated to certain facts; where facts are not stipulated, they are viewed in the light most favorable to Brown as the non-moving party. Brown joined AMETEK's Finance Department in March 2008 as the Manager of External Reporting, working at corporate headquarters in Berwyn, Pennsylvania.[11] In April 2011, Brown was promoted to Senior Manager, External Financial Reporting.[12] At all times, Brown reported to Jeffrey Stevens, who

---

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[7] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[9] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[10] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[11] Statement of Stipulated Material Facts ("SMF") ¶¶ 1–2, [Doc. No. 28-1].

[12] SMF ¶ 5.

participated in hiring Brown and supported her promotion to Senior Manager.[13]

Until 2017, Brown was responsible for management of 401(k) audits, but at that time she told Stevens that she had too much on her plate, and the responsibility for 401(k) was removed from Brown's portfolio.[14] In early 2018, AMETEK began the "lease project," a significant undertaking that concerned the adoption of a new accounting standard.[15] Brown did not express interest in working on the lease project.[16] In July 2018, Brown met with Stevens to discuss her career development and presented a list of her responsibilities and accomplishments since 2015.[17] Stevens reported to Thomas Montgomery, Senior Vice President and Comptroller, and the two met in September 2018 to discuss the possibility of promotion for Brown.[18] After that meeting, Stevens told Brown that the final decision from Montgomery and William Burke, the Chief Financial Officer, was that her work and effort were not at director level and there was no guarantee or timeline for further promotion.[19]

Brown contrasts her path at AMETEK with that of Robert Virelli, who also reported to Stevens.[20] Virelli was hired in September 2006 as Manager, Financial Reporting.[21] Virelli was promoted to Senior Manager, Financial Reporting in April 2011.[22] Virelli received a raise in March 2015.[23] However, although Brown and Virelli were both senior managers at that time, and

---

[13] SMF ¶¶ 3, 6, 7.
[14] SMF ¶¶ 19–21.
[15] SMF ¶¶ 22–23.
[16] SMF ¶ 24.
[17] SMF ¶ 25.
[18] SMF ¶ 26.
[19] SMF ¶27.
[20] SMF ¶ 31.
[21] SMF ¶ 28.
[22] SMF ¶ 30.
[23] SMF ¶ 46.

3

both reported to Stevens, Stevens facilitated the raise for Virelli months earlier than for Brown, whose own raise was approved in August 2015.[24] Brown received the raise after pursuing the issue and after Human Resources confirmed that Brown and Virelli's data was similar and that their pay should be kept at the same amount unless there were differences in their responsibilities.[25]

From 2017 to 2018, Virelli worked on the Revenue Recognition project, which was a significant change in the application of accounting principles to AMETEK.[26] Virelli was promoted to Director, Technical Accounting, effective May 1, 2018.[27] The decision was made by Montgomery and Burke, and approved by Chairman and Chief Executive Officer David Zapico.[28] There is no dispute that Virelli was qualified to be Director, Technical Accounting.[29] Brown did not seek promotion to Director, Technical Accounting, and Virelli's promotion did not preclude Brown from being promoted to the director level as well.[30]

Brown sought promotion to Director, External Reporting. It does not appear from the summary judgment record that anyone was appointed as Director, External Reporting. In July 2018, Brown sought a promotion to Director, Executive Compensation, as that position was available. Stevens told Brown he supported her promotion, but when she met again with Montgomery, he told her "not to bother" applying because Human Resources was going in a

---

[24] Def's Supp. Interrog. Resp. 4–5; Brown Dep. [Doc. No. 30-2] 170–72.

[25] Pl.'s Opp'n to Def.'s Mot. Summ. J. [Doc. No. 31] Ex. A #(AMETEK 164/P-Dep-59).

[26] SMF ¶¶ 32–33. Brown contends that the Revenue Recognition project was within the scope of Virelli's duties. Pl.'s Opp'n to Def.'s Mot. Summ. J. [Doc. No. 30] at 21.

[27] SMF ¶ 34. The promotion was announced in early April 2018. *Id.*

[28] SMF ¶ 35.

[29] SMF ¶ 40.

[30] SMF ¶¶ 38–39.

4

different direction.[31] Todd Henderson was hired in August 2018 as Director, Executive Compensation.[32] Henderson had 25 years of management experience, an MBA with a concentration in Management and Human Resources, and certifications in compensation and employee benefits.[33] Brown does not have these credentials.[34]

Brown and Vitelli received the same performance ratings from 2014 through 2016.[35] The 2016 forms identified promotion to director as the "Next Assignment" for both senior managers.[36] Brown maintains that in 2017, Stevens again assessed Brown and Virelli as equally strong performers, but Burke and Montgomery downgraded Brown's evaluation when they decided to promote Virelli, but not Brown, to the director level.[37]

Brown asserts that when she learned of Virelli's pending promotion, she spoke to Montgomery, and that he defended Virelli's promotion but gave her no feedback on her own promotion prospects.[38] Brown then spoke to Jennifer Reynolds, Corporate Counsel, about the situation, and Reynolds confirmed that Brown was aware that she would be making a complaint of gender discrimination by presenting a chart that compared Brown's career progression to that

---

[31] Pl's Resp. to Def.'s Interrog. No. 1 6–7 [Doc. No. 30-2]; Montgomery Dep. [Doc. No. 31] at 137-40.

[32] SMF ¶ 51.

[33] SMF ¶ 52.

[34] SMF ¶ 53.

[35] Pl.'s Opp'n to Def.'s Mot. Summ. J. [Doc. No. 30] at 9.

[36] *See* Montgomery Dep.[Doc. No. 31] 110–11. Brown also cites documents "P-DEP 32" and "P-DEP 38" in Exhibit A. to Plaintiff's opposition, that appear to be placeholders for electronic exhibits that were not provided to the Court, and therefore have not been reviewed. However, for purposes of summary judgment, the Court has accepted Brown's representations of the content of such documents and the characterization thereof.

[37] *See* Montgomery Dep. [Doc. No. 31] at 113–15 (discussing the two different versions of Plaintiff's 2017 evaluation, one listing her as "promotable" and the other listing her as "expandable").

[38] Pl's Resp. to Def.'s Interrog. No. 1 6–7, [Doc. No. 30-2]. Brown left work for the rest of the day after this meeting, which Montgomery and Burke considered unprofessional and showed a lack of maturity. Montgomery Dep.[Doc. No. 31] 121–26; ,Burke Dep.[Doc. No. 31] 112–13.

of Virelli.[39] Brown also met with Gina Alm-Myers, Human Resources Manager in April 2018.[40] Comparing her career path at AMETEK to Virelli's (and noting that she and Virelli were both promoted to Senior Manager in 2011 and that Virelli received a raise six months earlier than Brown), Brown asked when it would be her time to be promoted.[41] In this meeting, Brown did not specifically state that there was discrimination or bias on the basis of sex.[42] Brown states that Alm-Myers told her she needed to soften her delivery, and that after Brown expressed some concern about the reaction from her managers of involvement by Human Resources, Alm-Myers recommended that she not become involved.[43] Brown was aware of, but did not consult AMETEK's non-discrimination and anti-harassment policy or call the hotline AMETEK maintains to report concerns about gender bias.[44]

On August 1, 2018, Brown's evaluation form again listed her as promotable, after the 2017 form downgraded her to "expandable." However, for the first time, the evaluation stated that Brown needed to improve her communication skills.[45] In December 2018, Brown took a medical leave of absence that she attributes to the discrimination and retaliation she faced.[46] On January 8, 2019, Brown filed an administrative complaint of discrimination and retaliation with the Pennsylvania Human Relations Commission.[47] On May 10, 2019, at the end of her approved

---

[39] Pl's Resp. to Def.'s Interrog. No. 1 7–8 [Doc. No. 30-2]. Defendant disputes that this meeting happened.

[40] SMF ¶ 45.

[41] SMF ¶¶ 46–47.

[42] SMF ¶ 48.

[43] Brown Dep.[Doc. No. 31] 235–42.

[44] SMF ¶¶ 11–13.

[45] Pl.'s Opp'n to Def.'s Mot. Summ. J. [Doc. No. 30] at 15; Montgomery Dep. 147–48 [Doc. No. 31] (discussing "communication skills" being listed as Brown's "Key Development Needs" on her 2018 evaluation).

[46] Compl. ¶ 116.

[47] Compl. ¶ 117.

unpaid medical leave of absence, Brown resigned.[48]

Brown argues that AMETEK is rife with gender imbalance. Internal survey results in 2015 showed that 82% of supervisors, 90% of directors, and 94% of those at vice president or higher, were men.[49] Plaintiff contends that high-ranking executives in the Finance Department resisted diversity initiatives from Human Resources and operated as a "boy's club."[50]

Brown has produced evidence that Stevens had no patience for training sessions in unconscious bias,[51] that Stevens interrupted and spoke over Brown and other women in meetings,[52] that Stevens made dismissive comments about his wife on several occasions,[53] and that Stevens told her that a woman colleague resigned due to "mother's guilt."[54] Brown cites to similar remarks from Burke, Montgomery, and other high-ranking executives, and argues that women were not given the opportunity to succeed above a certain level.[55]

### III. DISCUSSION
#### A. Employment Discrimination

"Title VII makes it unlawful for an employer to discriminate against any individual with respect to compensation or terms, conditions, or privileges of employment on the basis of race or

---

[48] Compl. ¶¶ 119, 121.

[49] Pl.'s Opp'n to Def.'s Mot. Summ. J. Ex. A #(AMETEK 1571) [Doc. No. 31].

[50] Pl's Resp. to Def.'s Interrog. No. 1 8 [Doc. 30-2].

[51] *Id.* at 10.

[52] Brown Dep. [Doc. No. 30-2] at 189; Sena Dep. [Doc. No. 30-2] at 20; Corsi Decl. [Doc. No. 30-2] ¶ 20; Palmer Decl. [Doc. No. 30-2] ¶¶ 14–15. As Defendant points out, Plaintiff testified in her deposition that Stevens also spoke over men. Brown Dep [Doc. No. 30-2] at. 189.

[53] Brown Dep. [Doc. No. 30-2] at 54–55, 191–93; Palmer Dep. [Doc. No. 30-2] 44–45.

[54] Pl's Resp. to Def.'s Interrog. No. 1 11–12 [Doc. No. 30-2]. Defendant disputes that Stevens made this comment.

[55] For example, Brown points to a meeting in December 2018 where Montgomery asked what time the next day's meeting started and she said 9:00 a.m.. Montgomery said he thought Brown had previously told him 8:30 a.m., and then said it was "like when your wife tells you an earlier time to be ready when you are planning on going out as she does not want you to be late." Compl. ¶¶ 114–15.

gender."[56] A plaintiff may pursue a claim for employment discrimination under either the mixed-motive theory set forth in *Price Waterhouse v. Hopkins*[57] or the pretext theory set forth in *McDonnell Douglas Corp. v. Green*.[58] Brown pursues this case under the pretext theory, which applies a burden-shifting framework under which the plaintiff first must establish a prima facie case.[59] A plaintiff may establish a prima facie case of discrimination by showing that "(1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position that he sought to retain; (3) the plaintiff suffered an adverse employment action, e.g., termination of his employment; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination."[60]

To establish that the circumstances surrounding an adverse employment action could give rise to an inference of intentional discrimination,

> a plaintiff may either: (1) introduce evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action.[61]

"If the plaintiff successfully demonstrates a prima facie case of discrimination, the burden of production (but not the burden of persuasion) shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision."[62] A defendant

---

[56] *Collins v. Kimberly-Clark Pa., LLC*, 247 F. Supp. 3d 571, 588 (E.D. Pa. 2017) (citing 42 U.S.C. § 2000e–2(a)), *aff'd*, 708 F. App'x 48 (3d Cir. 2017).

[57] 490 U.S. 228 (1989).

[58] 411 U.S. 792 (1973). *See Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008).

[59] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

[60] *Greene v. V.I. Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *Makky*, 541 F.3d at 214).

[61] *Greene*, 557 F. App'x at 195 (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003)).

[62] *Mascioli v. Arby's Rest. Grp.*, 610 F. Supp. 2d 419, 433 (W.D. Pa. 2009) (citing *Simpson v. Kay Jewelers Div. of Sterling, Inc.*, 142 F.3d 639, 644 n.5 (3d Cir. 1998)).

"answers its relatively light burden" of production by "introducing evidence which, taken as true, would permit the conclusion that there was a . . . [legitimate] reason for the unfavorable employment decision."[63]

"Once the defendant has satisfied its burden of production at the second stage of the *McDonnell Douglas* tripartite framework, a court's analysis turns to the third and final aspect of the inquiry."[64] "At this point, the court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext."[65] "[A] plaintiff may defeat a motion for summary judgment . . . by pointing 'to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"[66]

Brown's claim is predicated on the fact that she was not promoted to director. The failure to promote may constitute an adverse employment action.[67] AMETEK argues that Brown cannot establish her prima facie case because she was not qualified for a director-level position as she did not perform the "extra" required for promotion and instead (1) offloaded certain assignments for which she had responsibility and (2) did not take on special projects or other tasks beyond her

---

[63] *Fuentes*, 32 F.3d at 763 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)).

[64] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999).

[65] *Id.*

[66] *Id.* at 413 (quoting *Fuentes*, 32 F.3d at 764; *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996)).

[67] *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (citation and quotations omitted) ("The Supreme Court has defined a tangible employment action as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

normal workload.[68] In particular, AMETEK cites the fact that Brown asked to have management of 401(k) audits removed from her responsibilities and did not take on the special "lease project."[69] Brown does not dispute these facts.[70]

Brown testified in deposition that she felt that she was worthy of a promotion by the beginning of 2017, but had no evidence that AMETEK's decision not to promote her as of December 2017 was the result of gender bias.[71] Brown agreed that Virelli was qualified to be Director of Technical Accounting and deserved the promotion in 2018 but stated that she was not promoted even though she was doing more work than Virelli in the 2017–18 time period.[72] Brown testified that she could not comment as to Henderson's qualifications.[73] Brown testified that she agreed that Montgomery and Burke actually thought that she was not promoted because her work and effort were not at director level.[74]

The only definitive action to which Brown can point is that Montgomery and Burke downgraded her 2017 evaluation from "promotable" to "expandable," and that Montgomery and Burke changed Virelli's 2018 evaluation (prepared after the decision to promote Virelli had been made) to raise his overall ranking from 4 (the same as Brown's) to 5.[75] However, Brown's evaluation was raised again to "promotable" in 2018, and there is no evidence that there was

---

[68] Def.'s Reply Br. Supp. Mot. Summ. J. [Doc. No. 32] at 14.

[69] *Id.* at 14–15.

[70] AMETEK also argues that by June 2018, Brown was "working the minimum to get a pay check." *Id.* at 15 (citing Brown Dep. [Doc. No. 32-1] at 273–75; Def.'s Reply Br. Supp. Mot. Summ. J. Ex. B.[Doc. No. 32-1]. The Court has not considered these comments, of which Defendant was unaware at the time, in granting summary judgment.

[71] Brown Dep. 78, ECF No. 32-1.

[72] *Id.* at 88.

[73] *Id.* at 287. Henderson's predecessor as Director of Executive Compensation was Cindy Goodman, a woman. *Id.* at 281.

[74] *Id.* at 280.

[75] Pl.'s Opp'n to Def.'s Mot. Summ. J. Ex. A #(P-Dep 039, 040) [Doc. No. 31]..

anything untoward or unusual in Burke and Montgomery revising the evaluations initially prepared by Stevens. Nor is there any evidence that these documents formed the basis for the promotion decisions, or that they were assessed on a comparative basis.

For the purpose of summary judgment, the Court will assume that Brown has established a prima facie case. Brown has produced evidence that her supervisor, Stevens, advocated for her promotion, and that her record was comparable to that of Virelli, who was promoted. The burden then shifts to AMETEK, which as discussed above, has produced evidence that Brown was not promoted because she did not take on special projects and offloaded some of her responsibilities. The burden therefore shifts back to Brown to produce sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for discrimination. Brown has not met this burden.

After a full opportunity for discovery, there is nothing more than speculation that Brown was not promoted because she is a woman. Although Brown argues that AMETEK has a track record of not promoting women above a certain level and "demographics can, in some instances, support an inference of . . . discrimination, context is key."[76] Brown has not supplied that context here. Brown agreed in her deposition that Montgomery and Burke actually thought that she was not promoted because her work and effort were not at director level (which is not to say that Brown agreed with that assessment).[77] Brown has not shown that these individual decision makers were motivated by discrimination on the basis of sex.

---

[76] *Jacobs v. Mayorkas*, No. 21-165, 2021 WL 3929718 at * 6 (E.D. Pa. Sept. 1, 2021) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 339–40 (1977)).

[77] Brown Dep. 280, ECF No. 32-1.

B.     Retaliation

Under Title VII, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[78] A plaintiff states a claim "if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence . . . (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."[79] Complaints to management may constitute opposition to discrimination.[80]

For purposes of summary judgment, the Court accepts Brown's account of her meetings with Reynolds and Alm-Myers, which reasonably may be viewed as raising a complaint of discrimination.[81] The alleged retaliatory conduct, however, is limited to the continued failure to promote Brown to the position of Director, and the fact that her 2018 evaluation stated that she needed to work on her communication skills.

The evaluation statement cannot constitute an adverse employment action, especially as Brown was again categorized as promotable. Brown argues that she was retaliated against when she was discouraged from applying for the Director, Executive Compensation role and that they falsely stated that they had notified Human Resources of Brown's interest in the position. However, Brown cannot show a causal connection between the complaint and the alleged retaliation. Brown met with Reynolds and Alm-Myers in April 2018, but did not meet with her

---

[78] 42 U.S.C. § 2000e–3(a).

[79] *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

[80] *Moore v. City of Phila.*, 461 F.3d 331, 343 (3d Cir. 2006).

[81] The filing of the administrative complaint under the PHRA cannot form the basis for a retaliation claim as Brown was on medical leave at the time and never returned to AMETEK.

supervisors to express interest in the Director, Executive Compensation position until several months later. This time gap, "without more, cannot create an inference of causation and defeat summary judgment."[82] Brown has not produced sufficient evidence of a connection between the complaint and not obtaining the promotion to Director, Executive Compensation, and summary judgment therefore will be granted on this claim.

### C. Hostile Work Environment

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated."[83] To state a claim for hostile work environment, a plaintiff must allege that (1) they were intentionally discriminated against because of race, color, religion, sex, or national origin; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for employer liability.[84]

In determining whether discrimination is severe or pervasive, a court must consider all of the relevant circumstances including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[85] Isolated incidents of

---

[82] *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007).

[83] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); *Hundley v. Wawa, Inc.*, No. 21-0627, 2021 WL 2555440, at *9 (E.D. Pa. June 22, 2021).

[84] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

[85] *Harris*, 510 U.S. at 23.

discrimination, unless extremely serious, do not alter the conditions of employment and therefore do not constitute a hostile work environment.[86]

Brown argues that the atmosphere at AMETEK led to her taking medical leave and eventually forced her to resign and seek employment elsewhere. Although this is evidence that she was subjectively affected,[87] "[t]o be sufficiently severe or pervasive, harassment must be shown to be both objectively and subjectively hostile or abusive."[88] The conduct, considered in total, was not objectively intolerable. Brown has shown neither a "steady barrage" of offensive comments[89] nor comments or actions so egregious as to constitute a hostile work environment as a matter of law.[90] Moreover, as AMETEK points out, many of the incidents of which Brown complains, such as inappropriate comments regarding diversity training and about wives, are attributed to Stevens, who Brown acknowledges supported her efforts to be promoted to director. In all, Brown conflates the tangible results of the boy's club atmosphere at AMETEK with the atmosphere itself. In other words, there is no indication that the conditions would have been intolerable had Brown been promoted. Because Title VII does not establish "a general civility code" for the workplace, and a reasonable factfinder could not conclude that the cited incidents were objectively severe or pervasive so as to alter the conditions of Brown's employment, summary judgment will be granted on this claim.[91]

---

[86] *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

[87] Plaintiff also testified at deposition that she perceived the comments to be "slightly intimidating and dismissive and a put down," which shows a less serious impact. Brown Dep. [Doc. No. 32-1] at 57.

[88] *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 202 (3d Cir. 2018) (citation omitted).

[89] *Canada v. Samuel Crossi & Sons, Inc.*, 476 F. Supp. 3d 42, 58 (E.D. Pa. 2020) (citation omitted).

[90] Conduct that has been held to reach the standard is far more egregious than has been alleged here. *See, e.g.*, *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (holding that "taken together," allegations that supervisor coerced the plaintiff into sexual relations, shared pornography with her, and scolded her for speaking with male colleagues, among other actions, supported severe or pervasive discrimination).

[91] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

IV.   **CONCLUSION**

Brown has not produced sufficient evidence for a reasonable factfinder to conclude that AMTEK's decision not to promote Brown to the director level was because of discrimination on the basis of sex or due to retaliation. Nor has Brown shown that the distasteful comments made by supervisors constituted a hostile work environment. AMETEK's motion for summary judgment will be granted. An order will be entered.